UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES P. KEANE,

          Plaintiff,

     v.                                                                     Case No. 23-C-922

BANKERS LIFE AND CASUALTY COMPANY,

          Defendant.

**DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

       On December 24, 2021, James P. Keane completed an Application For Health Insurance To Bankers Life and Casualty Company. Mr. Keane applied for a Lump Sum Critical Illness Policy for Cancer/Heart/Stroke/End Stage Renal Failure. Under the terms of the Policy, Bankers Life was to pay Mr. Keane a lump sum payment of $40,000 in the event that he was diagnosed with cancer, had a heart attack or stroke, or suffered end stage renal failure. In the Application for Insurance, Mr. Keane answered "no" to a question asking if within the last 5 years he had been treated for or diagnosed by a member of the medical profession for coronary artery disease. Mr. Keane also answered "no" to the question asking if within the past six months he had a blood pressure reading of greater than 150 systolic or 95 diastolic. The policy was issued to Mr. Keane on January 1, 2022, and he acknowledged receipt of it on January 20, 2022.

       In November 2022, Mr. Keane was diagnosed with bladder cancer. On November 14, 2022, he submitted a "Critical Illness Claim Form" for cancer benefits to Bankers Life. Because the claim was submitted within two years of the effective date of the policy, the claim was "contestable" and Bankers Life proceeded to obtain and review records of Mr. Keane's health

history. Upon learning that Mr. Keane had been diagnosed with coronary artery disease by his cardiologist within 5 years of his application, Bankers Life advised Mr. Keane in a letter dated January 13, 2023, that his claim was denied and his policy was cancelled.

Mr. Keane thereupon filed suit against Bankers Life in the Circuit Court for Brown County, asserting claims for breach of contract and bad faith, seeking payment under the policy, along with statutory interest on the allegedly overdue payment and punitive damages. Bankers Life timely removed the case to this court. Federal jurisdiction exists under 28 U.S.C. § 1332, as Mr. Keane is a citizen of Wisconsin, Bankers Life is a citizen of Illinois, and the amount in controversy exceeds $75,000. The case is before the court on cross motions for summary judgment. For the reasons that follow, the motion of Bankers Life will be partially granted and Mr. Keane's motion denied.

## BACKGROUND

On January 1, 2022, Bankers Life issued an "Individual Lump Sum Critical Illness Policy-Cancer/Heart/Stroke/End Stage Renal Failure" insurance policy to Mr. Keane. Def.'s Proposed Findings of Fact (DPFOF) ¶ 1, Dkt. No. 23. The Policy that Mr. Keane purchased was a G-224 policy, which combines heart/stroke/end stage renal failure coverage and cancer coverage. Pl.'s Proposed Findings of Fact (PPFOF) ¶¶ 1–2, Dkt. No. 25. At the time, Bankers Life also offered G-220 policies for cancer coverage alone, as well as G-222 policies for heart/stroke/end stage renal failure coverage. *Id.* ¶ 2. The Policy's application contained a series of health-related questions in Sections 5.A–H. DPFOF ¶ 2. Mr. Keane answered "No" to all questions, including questions in Sections 5.G. and 5.H., which state in relevant part:

> G. Within the last 5 years, have you been treated for or diagnosed by a member of the medical profession for the following conditions:
>
> - Heart attack, heart disease, heart surgery, congestive heart failure, angina or been prescribed nitroglycerin;
> - Any other abnormality of the heart or circulatory system including coronary artery disease, peripheral vascular disease, stroke, transient ischemic attack, or any other cerebrovascular disease;
> - Any abnormal kidney function, kidney disease, renal failure or insufficiency, required dialysis;
> - Diabetes (non-gestational), spina bifida, lupus, or sickle cell anemia?
>
> H. Within the past 6 months, have You had a blood pressure reading of greater than 150 systolic or 95 diastolic?

*Id.* The Policy also included an "IMPORTANT NOTICE ABOUT STATEMENTS IN THE APPLICATION," stating:

> Please read the copy of the application, which is a part of this Policy. Check to see if any medical history requested has been left out or was misstated. Write Us if any information shown is not correct or complete. We issued this Policy on the basis that the answers to all questions are correct and complete. Any omission or incorrect statements could cause an otherwise valid claim to be denied.

*Id.* ¶ 3. Mr. Keane did not have any specific discussions about any of the questions in the application with Mr. Langfeldt, Bankers Life's agent, nor does he recall saying anything about his heart health. *Id.* ¶¶ 4, 6. Mr. Keane read and signed the application. *Id.* ¶ 5. He also acknowledged receiving and understanding the Policy by signing a receipt for it, dated January 20, 2022. *Id.* ¶ 8.

While the Policy was in effect, Mr. Keane was diagnosed with bladder cancer. PPFOF ¶ 3. On November 14, 2022, Mr. Keane submitted a "Critical Illness Claim Form" to Bankers Life, applying for cancer benefits under the Policy. DPFOF ¶ 9. The claim was contestable because it was submitted within two years of the Policy's effective date, so Bankers Life proceeded to obtain and review records of Mr. Keane's health history. *Id.* ¶ 10. Bankers Life received records from Mr. Keane's cardiologist, Dr. Fergus, showing that Mr. Keane visited Dr. Fergus between February

3

13, 2019 and October 20, 2021. *Id.* ¶ 11. Bankers Life sent Mr. Keane a denial letter on January 13, 2023, declining Mr. Keane's claim for benefits under the Policy because of what it found to be material misrepresentations in the application, based on its review of Dr. Fergus' records. *Id.* ¶¶ 12–13.

The records revealed, for instance, that on October 19, 2020, Dr. Fergus performed a heart catheterization procedure on Mr. Keane, which led Dr. Fergus to conclude that Mr. Keane had "mild nonobstructive coronary artery disease" and "some evidence of left ventricular hypertrophy." *Id.* ¶ 19. A diagnosis of nonobstructive coronary artery disease increases the risk of myocardial infarction, or heart attack in that individual. Def.'s Additional Findings of Fact (DAFOF) ¶ 2, Dkt. No. 30. Mr. Keane was diagnosed with left ventricular hypertrophy, a thickening of the heart muscle, on April 6, 2021. DPFOF ¶ 22. On April 28, 2021, Physician's Assistant Heather L. Johnson noted "nonobstructive coronary artery disease recommended continued aspirin and statin . . ." *Id.* ¶ 20. On October 20, 2021, Dr. Fergus recorded a conversation with Mr. Keane in which he was told to continue aspirin, statin, diet, and exercise for his mild nonobstructive coronary artery disease. *Id.* ¶ 21. Dr. Fergus believes he would have used the words "mild nonobstructive coronary artery disease" in that conversation, or something very similar. *Id.*; Fergus Dep. 42:12-25, Dkt. No. 18-5. By answering "No" to questions in Section 5.G. of his application, Mr. Keane denied having been treated or diagnosed with a disease or other abnormality of the heart or circulatory system, including coronary artery disease, in the last five years. DPFOF ¶ 17. Accordingly, Bankers Life concluded that Mr. Keane's answer in Section 5.G. of the application should have been "Yes." *Id.* ¶ 23.

Similarly, Dr. Fergus' records also indicated that Mr. Keane had a blood pressure reading higher than 95 systolic in the last six months prior to filling out his application, which was contrary

4

to Mr. Keane's answer in Section 5.H. of his application. *Id.* ¶¶ 17–18. Specifically, on October 20, 2021, Dr. Fergus' records indicated that Mr. Keane had "Blood pressure 144/98." *Id.* ¶ 21. Dr. Fergus believes that Mr. Keane's blood pressure reading would have been conveyed to him during that visit and that Mr. Keane was aware of his several heart abnormalities based on conversations Dr. Fergus had with him. *Id.* ¶¶ 21, 29. Dr. Fergus' practice had a web portal where patients could review their medical records. *Id.* ¶ 28. On February 24, 2023, Bankers Life tendered a check to Mr. Keane, offering to refund the premiums paid on the Policy in the sum of $1,749.80. *Id.* ¶ 34. Had Bankers Life known the true facts about Mr. Keane's health history, the G-224 Policy would not have been issued. DAFOF ¶ 5. Mr. Keane could have obtained a G-220 policy with coverage only for cancer risks without having to answer questions in Sections 5.G. or 5.H. PPFOF ¶ 5.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). The fact that the parties filed cross-motions for summary judgment does not alter this standard. In evaluating each party's motion, the court must "construe all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (cleaned up). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citation

5

omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citation omitted). But even on issues where the moving party has the burden of proof, when the record, taken as a whole, could not lead a rational jury to find for the non-moving party, there is no genuine issue and therefore no reason to go to trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### A. Recission of Policy

As an affirmative defense to Mr. Keane's breach of contract claim, Bankers Life contends that it is entitled to recission of its insurance policy. Wisconsin substantive law governs the legal issues in this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Section 631.11(1)(b) of the Wisconsin Statutes permits an insurer to rescind an insurance policy and deny the payment of benefits under its policy where an applicant makes a false representation. To prevail on this defense, Bankers Life must prove by clear and convincing evidence "(1) that (a) a misrepresentation was made *and* (b) the person making it knew, or should have known, that it was false; *and* (2) either (a)(i) the insurer relied on the misrepresentation, and (ii) that misrepresentation was material, or (iii) it was made with intent to deceive; *or* (b) the misrepresented fact contributed to the loss." *Pum v. Wis. Physicians Serv. Ins. Corp.*, 2007 WI App 10, ¶¶ 9, 13, 298 Wis. 2d 497, 727 N.W.2d 346 (Ct. App. 2006) (emphasis in original).

As the legislative comment to § 631.11 explains, a misrepresentation need not contribute to the loss in order to justify rescission under the statute. Wis. Stat. Ann. § 631.11, Comments—

6

L.1975, c. 375, § 41. In other words, the fact that a misrepresentation about the condition of his heart did not increase the risk that Mr. Keane would have cancer is not fatal to Bankers Life's defense. "Insurer reliance plus either materiality or fraud is . . . sufficient." *Id.* A misrepresentation is material if it would have affected the underwriting decision of the insurer or of a reasonable insurer. *Id.*; *see also Progressive Northern Ins. Co. v. Bachmann*, 314 F. Supp. 2d 820, 828 (W.D. Wis. 2004) ("A statement is 'material' if it had 'a significant bearing upon an insurer's decision to insure the risks the policy is to cover.'" (quoting Wis. JI–Civil 3100)).

In this case, it is undisputed that there are "discrepancies between Mr. Keane's answers to [Bankers Life's] application questions and his medical records." Pl.'s Resp. Br. at 1, Dkt. No. 31. The dispute centers around whether Mr. Keane should have known that his answers to questions in the Application were false and whether those were material. As to materiality, Mr. Keane argues that because his claim was for cancer benefits, and because he could have obtained a G-220 policy with coverage only for cancer risks without having to answer questions in Sections 5.G. or 5.H., his answers to those questions were immaterial. However, the inquiry focuses on the insurer's decision to issue a policy that covers certain risks, not on whether a misrepresentation has any bearing on a future claim based on only some of those risks. It is undisputed that if Bankers Life had known the truth about Mr. Keane's health, the G-224 Policy would not have been issued. That Mr. Keane could have obtained a G-220 policy instead does not change that fact.

Mr. Keane relies on *Hass v. Integrity Mutual Insurance Company*, 4 Wis. 2d 198, 90 N.W.2d 146 (1958), as support for his argument that his misrepresentation as to his heart condition is not material or at least raises a jury issue. But *Hass* was decided long before the Wisconsin legislature enacted § 631.11 and thus has no bearing on its meaning. The comment to § 631.11

7

explains why the Wisconsin legislature adopted an approach that it realized was less generous to the insured than some statutes in other States:

> Some statutes are more generous to the insured. They reject reliance and materiality as sufficient criteria of effectiveness of a misrepresentation or false warranty. They insist on contribution to the loss as the necessary and sufficient condition. Such statutes are basically unfair to the insurer. They remove the pressure on the insured to tell the truth. He can lie with impunity, for the worst that will happen if he is caught is loss of the part of his coverage for which he either did not pay because his lie resulted in a lower premium, or for which he could not have obtained protection at any price because the insurer would either have refused to issue the policy at all or would have insisted on attaching an excluding endorsement.
>
> This draft seeks a better balance, protecting the insurer against fraud and violations of conditions that would preclude acceptance of the risk, and giving it access to the information it needs to underwrite, without giving it arbitrary power over the insured through application of the harsh common law doctrines.

Wis. Stat. Ann. § 631.11, Comments—L.1975, c. 375, § 41.

The fact that the misrepresentation concerned the risk of a heart attack, as opposed to cancer, thus does not render it immaterial to the G-224 policy Mr. Keane purchased. It is undisputed that the G-224 policy would not have been issued to Mr. Keane had he accurately answered the questions in Sections 5.G and 5.H of the application. That fact makes it material and the only remaining issue is whether Mr. Keane knew or should have known that his answers were false.

Mr. Keane contends that there is a factual dispute as to whether he knew his answers to the questions in Sections 5.G and 5.H were false. He claims that his cardiologist never used the phrase "coronary artery disease" in his direct interactions with him. The only condition he claimed he recalled talking to his health care professionals about was his high blood pressure. While his cardiologist and assistant referred to his coronary artery disease in their notes, Mr. Keane contends that he has no recollection of their using that term in their discussions with him. He thus contends that he answered the questions in the Application truthfully.

8

Bankers Life relies on *La Plant v. Household Life Insurance Company* to argue that Mr. Keane should have known his answers were false. No. 12-C-684, 2013 WL 3341054 (E.D. Wis. July 2, 2013). In that case, the decedent answered "no" to a question on his application for life insurance asking whether he was currently receiving disability income benefits or submitted a claim for disability income benefits within the past five years. In fact, the decedent had applied for Social Security Disability Insurance Benefits less than three years earlier and began receiving benefits only three months before he completed the on-line application. *Id.* at * 1. In granting the insurer's motion for summary judgment, the court rejected the plaintiff's argument that his answer was truthful because he had applied for and was receiving disability *insurance* benefits, as opposed to disability *income* benefits. *Id.* at *5. The court reasoned that the applicant should have known that his answer denying receipt or submission of a claim for disability income benefits was false because it was undisputed that he had recently submitted a claim for and was receiving disability insurance benefits. *Id.* at *4. Looking at the language of the application's question in context, the court noted that the use of the term "income," as opposed to "insurance," benefits did not make the question ambiguous, and that the applicant should have realized that the question was aimed at discovering whether he had claimed that he was incapable of work due to any disability, not whether he was receiving income as a result. *Id.* at *3–4.

On this record, by contrast, a dispute of fact exists as to whether Mr. Keane should have known that his answers to questions in Sections 5.G. and 5.H. were inconsistent with his medical records. Bankers Life points to Mr. Keane's medical records, Dr. Fergus' web portal where Mr. Keane could have reviewed those records, and Dr. Fergus' belief that he communicated to Mr. Keane that he was diagnosed with "mild nonobstructive coronary artery disease" and that his blood pressure reading was higher than 95 diastolic, as evidence that Mr. Keane should have known that

9

his answers were false. DPFOF ¶¶ 21, 28–29. On the other hand, Mr. Keane argues that, while his medical records may include terms that Bankers Life's application used, he only recalls having general conversations about treating his high blood pressure, with no mention of "coronary artery disease" or specific levels of high blood pressure, and points to testimony from Dr. Fergus in which he admits that he may have not used the words "coronary artery disease" with Mr. Keane because he uses more common terms when counseling patients. Keane Dep. 35:15-36:19, Dkt. No. 18-2; Fergus Dep. 43:1-15.

Given this evidence, the court is unable to conclude as a matter of law that Mr. Keane knew or should have known about the discrepancies in his medical records. Nor can the court conclude that Mr. Keane was truthful. A jury could find that Mr. Keane should have known about his cardiac diseases and abnormalities, or that a mere layperson's awareness of high blood pressure was insufficient to answer his application questions accurately. *See Hejsak v. Great–West Life & Annuity Ins. Co.*, 331 F. Supp. 2d 756, 762–66 (W.D. Wis. 2004) (ruling that an insurer failed to show as a matter of law that an applicant knew his answer to be false where it was "unclear whether a layperson [applicant] would classify a back injury, which according to [the applicant's] medical records consisted of 'cervical and thoracic disc protrusions and sacroiliac joint displacement,' as a 'disorder' in the same category as stroke, paralysis, multiple sclerosis or epilepsy" when asked about a "central nervous system disorder" in his application). Because there are factual issues in dispute, such that a reasonable jury could find in either party's favor, the court cannot grant summary judgment on Mr. Keane's breach of contract claim, nor on Bankers Life's recission of policy affirmative defense, as a matter of law.

10

Case 1:23-cv-00922-WCG   Filed 06/26/24   Page 10 of 13   Document 36

**B. Bad Faith**

Mr. Keane asserts that Bankers Life's denial of his cancer benefits claim constituted bad faith. In Wisconsin, the tort of bad faith is not a tortious breach of contract claim, but an independent intentional wrong which results from a breach of a duty imposed by a contractual relationship. *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 687, 271 N.W.2d 368 (1978). To prevail on his claim for bad faith, Mr. Keane must show "an absence of a reasonable basis for denying benefits" and that Bankers Life acted with "knowledge or reckless disregard of the lack of a reasonable basis." *Id.* at 691. If the insurer has investigated and developed the facts necessary to evaluate the claim, and has not recklessly ignored or disregarded those facts, the duty to pay insurance benefits is "fairly debatable" and summary judgment in the claimant's favor is precluded. *Id.* However, knowingly failing "to exercise an honest and informed judgment" constitutes bad faith. *Id.* at 692.

In this case, Bankers Life had a reasonable basis to deny Mr. Keane's claim for benefits. Investigation of Mr. Keane's medical records revealed that Mr. Keane suffered from certain cardiac conditions that were in contravention with what he had indicated in his application. *See Hejsak*, 331 F. Supp. 2d at 766 (dismissing a claim for bad faith where an applicant denied having a central nervous system disorder and "the discussion of spinal damage in [the applicant's] medical records suggest[ed] that [the insurer] had a reasonable basis on which to deny plaintiff's claim for benefits"). And although, as explained above, a reasonable factfinder may not find that Mr. Keane knew, or should have known, that the statements in his application were false, another reasonable person working for Bankers Life may have reasonably found otherwise. *See id.* at 767. Because Bankers Life's duty to pay insurance benefits was fairly datable, Mr. Keane's motion for summary

judgment will be denied and Bankers Life's motion will be granted as to Mr. Keane's bad faith claim.

C. **Statutory Interest**

Mr. Keane asserts that he is entitled to prejudgment statutory interest on the overdue payment of his claim, pursuant to Wis. Stat. § 628.46(1). Section 628.46 of the Wisconsin Statutes provides in relevant part:

> Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. . . . Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer. . . . All overdue payments shall bear simple interest at the rate of 7.5 percent per year.

However, an insured is not entitled to statutory interest when his claim is fairly debatable. *See Kontowicz v. Am. Standard Ins. Co. of Wis.*, 2006 WI 48, ¶ 48, 290 Wis. 2d 302, 327, 714 N.W.2d 105, 117, *clarified on denial of reconsideration*, 2006 WI 90, ¶ 48, 293 Wis. 2d 262, 718 N.W.2d 111 ("Our case law has generally equated 'reasonable proof' of non-responsibility under § 628.46 with whether the 'coverage issue was fairly debatable'") (quoting *Allstate Ins. Co. v. Konicki*, 186 Wis. 2d 140, 160, 519 N.W.2d 723 (Ct. App. 1994)).

In this case, as explained above, because Bankers Life's duty to pay benefits under its policy was fairly debatable, Mr. Keane is not entitled to statutory interest on an overdue payment pursuant to Wis. Stat. § 628.46. *See Williams v. Farmers New World Life Ins. Co.*, No. 18-CV-354, 2022 WL 2275502, at *5 (E.D. Wis. June 23, 2022) (denying prejudgment interest under § 628.46 because the insurer in a life insurance policy reasonably relied on a note in the decedent's medical records where she reported daily marijuana use, which her application denied).

Accordingly, Mr. Keane's motion for summary judgment will be denied and Bankers Life's motion will be granted as to Mr. Keane's claim for interest under § 628.46(1).

### D. Punitive Damages

What remains is Mr. Keane's claim for punitive damages. In Wisconsin, however, punitive damages are not available as a remedy in a contract action. *Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 2021 WI 8, ¶ 58, 395 Wis. 2d 421, 954 N.W.2d 339. Because Mr. Keane's tortious claim for bad faith will be dismissed, and only his claim for breach of contract will survive summary judgment, his claim for punitive damages will likewise be dismissed.

## CONCLUSION

For these reasons, Mr. Keane's motion for summary judgment (Dkt. No. 16) is **DENIED**. Bankers Life's cross-motion for summary judgment (Dkt. No. 19) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is denied with respect to Bankers Life's recission of policy affirmative defense. The motion is granted in all other respects. Mr. Keane's bad faith, statutory interest, and punitive damages claims are dismissed, while his breach of contract claim remains.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of June, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge